LOUISIANA STATE SEMINARY (FEATHERMAN v.). See Case No. 4,713.

LOUISVILLE (BIGELOW v.). See Case No. 1,400.

## Case No. 8,542.

### The LOUISVILLE v. STROUT et al.

[19 Hunt, Mer. Mag. 186.]

Circuit Court, E. D. Louisiana. May 27, 1839.[1]

COLLISION—DRIFTING VESSEL—IMPROPER ANCHORAGE.

[The evidence showed that the passes at the mouth of the Mississippi river are well known to be intricate and difficult of navigation and liable to varying currents. Should the wind die away, a vessel caught in one of them is sure to drift and become unmanageable. This happened to the L., a sail vessel, which entered the pass with a good wind, which died away while she was therein, leaving her helpless. While in this condition she drifted against the H., a vessel anchored in the main thoroughfare. *Held*, that the L. was not guilty of any fault; that the fault was wholly with the H. in anchoring in an improper place.]

[Appeal from the district court of the United States for the Eastern district of Louisiana.

[This was a libel by Jonathan Strout and others against James Foster and others, claimants and owners of the ship Louisville, to recover damages for injury resulting from a collision. From a decree of the district court in favor of plaintiffs (case unreported), defendants appeal.]

McKINLEY, Circuit Justice. This case comes before this court upon an appeal from the decree of the district court for the Eastern district of Louisiana. The appellees, owners of the ship Harriet, filed their libel in the court below for collision, and upon the trial the court rendered a decree in favor of the libellants for $2,701.07. By the evidence, it appears that the Harriet had passed over the bar through one of the passes or outlets at the mouth of the Mississippi river, outward bound, on the 26th of May, 1836, and came to anchor near the bar, the Louisville lying below, a distance of several miles, weighed anchor, with a fresh and favorable wind for coming in through the same pass. As she approached the bar the wind died away, and the current being stronger than usual, owing to a strong wind from the south the night before, she drifted and ran afoul of the Harriet. These passes, it appears, are intricate and difficult to navigate, and subject to counter and under currents. If the wind die away when a ship is coming in, she is certain to drift and become unmanageable. Knowing these facts, a prudent master would never anchor his vessel in the thoroughfare of one of these passes. The evidence shows, however, that the master of the Harriet did anchor his vessel immediately in the thoroughfare, and that, too, after having been run afoul of by another vessel, about a year before, at or near the same place. There are four possibilities under which a collision may occur. First, it may happen without blame, being

attributable to either party, as when the loss is occasioned by a storm, or any other vis major. In that case the misfortune must be borne by the party on whom it happens to light; the other not being responsible to him in any degree. Secondly, when there has been a want of due diligence or skill on both sides. In such case the rule of law is that the loss must be apportioned between them, as having been occasioned by the fault of both. Thirdly, it may happen by the misconduct of the suffering party only; and then the rule is that the sufferer must bear his own burden. Lastly, it may have been the fault of the ship which ran the other down, and in this case the injured party would be entitled to entire compensation from the other. The Woodrop-Sims, 2 Dod. 83. The third rule here laid down, it appears to me, applies with great force to the case under consideration. The misconduct on the part of the master of the Harriet in anchoring his ship immediately in the thoroughfare is fully made out by the proof; while, on the contrary, there is no fact proved going to show mismanagement, want of skill, or negligence on the part of the master of the Louisville. It is true that the opinions of some nautical men, found in the evidence, show that it was possible for the Louisville to have avoided a collision had everything been done that it was possible to do. But the law imposes no such diligence on the party in this case. So far as the Harriet was concerned, the Louisville was entitled to the full use of the thoroughfare of the pass. The master of the Harriet having obstructed it, with a full knowledge of the danger of doing so, has been guilty of such misconduct as to deprive the appellee of the right of action against the appellant. 3 Kent, Comm. 230. It was insisted by the counsel for the appellees, that the Harriet being at anchor, and the other ship under sail, that the latter was therefore liable. It is true, if a ship at anchor, with no sails set, in a proper place for anchoring, and another ship under sail, occasions damage to her, the latter is liable. But the place where the Harriet anchored was an improper place, and therefore the appellees must abide the consequences of the misconduct of the master. Wherefore it is decreed and ordered that the decree of the district court be reversed, and held for naught, and that the appellants recover of the appellees their costs in this behalf expended; and it is further decreed and ordered that this case be remanded to the district court, with instructions to dismiss the libel of the libellants.

[This case was appealed by the libellants to the supreme court, and was there affirmed upon a divided court. No opinion. Strout v. Foster, 1 How. (42 U. S.) 89.]